932 So.2d 278 (2005)
In re Petition of Jane DOE for a Judicial Waiver of Parental Notice of Termination of Pregnancy.
Jane Doe, Appellant.
No. 2D05-5321.
District Court of Appeal of Florida, Second District.
November 10, 2005.
*279 Randall C. Marshall, of ACLU Foundation of Florida, Inc., Miami; Rebecca Harrison Steele, of ACLU Foundation of Florida Inc., Tampa; and Penny Kfare Jacobs, Orlando, for Appellant.
BY ORDER OF THE COURT.
By the opinion attached, the Second District Court of Appeal has reversed the order entered by The Honorable Ellen Masters, Circuit Judge of the Tenth Judicial Circuit, in and for Polk County, Florida, in Case Number 53-2005DP-183892XX, dismissing a petition for a judicial waiver of parental notice of termination of pregnancy.
The minor may consent to the performance or inducement of a termination of pregnancy without notice to a parent or guardian.
NORTHCUTT, Judge.
A minor employing the pseudonym Jane Doe challenges a final order dismissing her petition for judicial waiver of the statutory requirement that her physician notify her *280 parent or guardian prior to terminating her pregnancy. We reverse.
The proceeding below arose pursuant to section 390.01114, Florida Statutes (2005). That law requires a physician to notify a minor's parent or legal guardian at least 48 hours before performing an abortion on that minor. § 390.01114(3)(a). The statute excuses the notice requirement under five circumstances, one of them being that the minor has successfully petitioned a circuit court to waive it. § 390.01114(3)(b)(5). This type of provision, commonly referred to as a judicial bypass, has been deemed necessary to the constitutionality of statutes restricting the abortion rights of minors. See, e.g., Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (construing a statute requiring parental consent to a minor's abortion); Lambert v. Wicklund, 520 U.S. 292, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997) (construing parental notice statute under Bellotti standards); Ohio v. Akron Ctr. for Reprod. Health, 497 U.S. 502, 510-11, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990); Planned Parenthood Ass'n of Atlanta Area, Inc. v. Miller, 934 F.2d 1462 (11th Cir.1991) (upholding Georgia parental notification statute as satisfying Bellotti criteria).
The Florida statute provides that the court must grant a judicial bypass petition if it finds (1) by clear and convincing evidence, that the minor "is sufficiently mature to decide whether to terminate her pregnancy"; (2) by a preponderance of the evidence, that there "is evidence of child abuse or sexual abuse of the petitioner by one or both of her parents or her legal guardian"; or (3) by a preponderance of the evidence, that "the notification of a parent or guardian is not in the best interest of the petitioner." § 390.01114(4)(c), (d). If the court does not find that any of these conditions have been met, it must dismiss the petition. Id. The statute further provides that, unless the minor requests an extension, the petition will be deemed granted if the court does not rule on it within 48 hours of its filing. § 390.01114(4)(b).
Doe petitioned the circuit court to waive the notice requirement on October 27, 2005. Employing a form petition devised for the purpose by Florida Rule of Juvenile Procedure 8.987, she alleged two of the statutory grounds for a judicial bypass: that she is sufficiently mature to decide whether to terminate her pregnancy and that notifying her parents prior to the procedure would not be in her best interest. The circuit court appointed counsel to assist Doe and, on October 28, held an evidentiary hearing at which Doe was the only witness.
Doe stated that she is 17 years old and that she will turn 18 in about a month.[1] She has graduated from high school with an impressively high grade point average. She now attends a trade school in a nearby city, for which she has incurred student loans that she will have to repay after she completes her program. Doe lives at home with her parents, but she contributes to her living and automobile expenses with income from part-time employment. She testified that, in the past when she was able to work more, she helped to pay some of the family's general household expenses.
Doe testified that she is pregnant by her steady boyfriend, whom she plans to marry in the next year. She diagnosed her pregnancy after missing her menstrual period and taking a home pregnancy test. At the time of the hearing below she believed *281 she was about six weeks pregnant, but she had no medical confirmation of this or, indeed, of the pregnancy itself. She and her boyfriend had visited a medical clinic to seek a termination of the pregnancy, but the clinic instead referred her to a juvenile justice program to obtain assistance in petitioning for a judicial waiver of the statutory parental notice requirement.
Doe's desire to terminate her pregnancy is "not at all" motivated by any pressure from her boyfriend, she testified. Rather, she said, at this time in her life she is not prepared for the struggle, financial or otherwise, associated with supporting a child. It would require her to work full-time and therefore to give up her educational endeavor, which in itself would create further difficulties in the future. Doe testified she is aware that an abortion poses medical risks, some of which are long-term and include the possibility that she could not bear children in the future. Acknowledging that her family's religion is Catholic, she testified that she has considered the religious and future emotional ramifications of her decision.
According to Doe, she has a good relationship with her parents. But she believes that they would adamantly oppose her decision. Beyond that, she testified that the issue might well destroy the relationship and that her parents might ask her to leave their home.
At the conclusion of the hearing, the circuit court dismissed the petition by an order in the form suggested by Florida Rule of Juvenile Procedure 8.991. The order stated:
The minor has not proven by sufficient evidence any of the criteria that would permit a judicial waiver of the parental notification requirement of Section 390.01114(3), Florida Statutes, for the following reasons:
The child currently resides with her parents and suspects that she is pregnant pursuant to a home pregnancy test. She has not consulted with a medical professional. She and her boyfriend went to a clinic to terminate her pregnancy and were advised to go to the ... County Justice Center for assistance in filing this proceeding. Further, the child recognizes that she enjoys a good relationship with her parents but is concerned that advising them of her pregnancy would cause the relationship to change. The child has not established that a waiver would be in her best interest.
The provisions set forth in Florida Statute § 390.01114(3)(b) are not applicable. The grounds set forth in § 390.01114(4)(c) have not been established by clear and convincing evidence. The grounds set forth in § 390.01114(4)(d) have not been established by a preponderance of the evidence, and in fact, are not applicable in this cause . . . .
Doe appealed on November 3, pursuant to Florida Rule of Appellate Procedure 9.110(n). As mandated by this rule which provides that the order dismissing the waiver petition will be deemed reversed if we do not decide the appeal within 10 days after its filingwe have expedited our consideration of this matter.
We preface our discussion by noting that this is the first time this court has been called upon to address this parental notification statute. It was enacted by the 2005 legislature, ch. 2005-52, Laws of Fla., and became effective only on June 30, 2005. In re Amendments to the Florida Rules of Juvenile Procedure, 907 So.2d 1161 (Fla. 2005).[2] There is scant Florida case law *282 interpreting or applying it. However, Florida's statute is similar to several that have been adopted in other states, and we have been assisted by judicial interpretations of those laws.
Under the statute, our starting point must be the findings of fact set forth in the circuit court's order. Section 390.01114(4)(e) requires the court to "issue written and specific factual findings and legal conclusions supporting its decision." (Emphases supplied.) Requiring trial courts to set forth findings to support their rulings serves important purposes. In cases such as this, involving the application of a statute that so directly touches on an individual's constitutional right, requiring written findings helps to ensure that the decision has been reached strictly according to constitutionally permissible criteria. See In re T.W., 543 So.2d 837, 841 (Fla. 5th DCA) (holding that statute requiring parental consent to a minor's abortion was unconstitutional in part because its judicial bypass provision lacked procedural safeguards to avoid the "clear danger that trial judges will render a decision on the basis of their own moral, religious or political beliefs"), approved, 551 So.2d 1186 (Fla. 1989).
In this case, the findings included in the order are insufficient to serve this critical purpose. Manifestly, nothing in the order's few recited facts supports a conclusion that Doe is not sufficiently mature to decide whether to terminate her pregnancy or that she failed to prove that notifying her parents of her decision would not be in her best interest. The facts contained in the order might well be typical of the great majority of minors who would petition for a waiver under the statute. Certainly, it could be expected that most such petitioners live with their parents; many of them have learned of their pregnancies via commercially available tests administered at home; it may well be that many will have been directed to the courthouse by the very medical personnel they sought to consult. Finally, who can doubt that most minorsindeed, most adultsin Doe's position would fear that divulging this decision would damage their relationships with their parents? These facts, standing alone, simply bear no logical relationship to the statutory grounds for a judicial bypass of the parental notification requirement. At best, they beg the question whether those grounds exist in this case. More importantly, if those few circumstances are sufficient in themselves to justify withholding a judicial bypass, then virtually no minor could ever obtain one under Florida's parental notification statute.[3]
For obvious practical and constitutional reasons, the legislature cannot be presumed to have intended that result. To the contrary, it identified several areas of inquiry to assist the court's assessment of the judicial bypass grounds as they relate to the specific petitioner before it. Thus, *283 the statute provides that "the court shall hear evidence relating to the emotional development, maturity, intellect, and understanding of the minor, and all other relevant evidence." § 390.01114(4)(e). The findings contained in the order dismissing Doe's petition do not specifically or logically relate to any of these factors.
Another important reason that courts may be required to set forth written findings is that they facilitate appellate review. See, e.g., Wackenhut Corp. v. Canty, 359 So.2d 430, 434 (Fla.1978) (stating that order granting new trial must contain findings and reasons in order to facilitate intelligent appellate review). Where, as here, orders do not contain sufficient findings of fact as required by law, appellate courts typically deem them incapable of meaningful review and they remand with directions to the issuing courts to make the necessary findings. See, e.g., Hopkins v. State, 632 So.2d 1372, 1376-77 (Fla.1994) (reversing for a new trial because absent the "specific findings of reliability" mandated in section 90.803(23), an appellate court cannot determine whether the hearsay statements admitted under the statute were in fact reliable). We decline to do so in this case, for two reasons.
First, a remand for the purpose of supplying appropriate findings of fact would violate the legislative intention that judicial bypass petitions progress through the justice system without delay. The legislative concern for speed and efficiency is so important that it is permitted to trump all other considerations contained in the bypass provision. Hence, the statute provides that if the circuit court does not rule on a waiver petition within 48 hours, it is deemed granted. § 390.01114(4)(b); see also In re A.S., 909 So.2d 524 (Fla. 1st DCA 2005). At the same time, the statute calls for an expedited appeal of an order denying a waiver petition. § 390.01114(4)(f). The legislature requested that the supreme court adopt rules to ensure that judicial bypass proceedings "are handled expeditiously and in a manner consistent with this act." § 390.01114(5). Accordingly, the supreme court promulgated a rule directing that in an appeal of an order denying a parental notification waiver, the district court of appeal must render its decision within 10 days after the filing of the notice of appeal. Fla. R.App. P. 9.110(n). Consistent with the legislative scheme, the rule provides that "[i]f no decision is rendered within the foregoing time period, the order shall be deemed reversed, [and] the petition shall be deemed granted." Id.
Importantly, the rule contains no exceptions. If we fail to rule within 10 days for any reasonthe order is deemed reversed and the petition is deemed granted. To carve an exception for orders that lack the mandatory findings necessary for appellate review would be beyond our constitutionally-assigned purview, would violate the letter of the appellate rule, and would contravene the clearly expressed intention of the legislature. Moreover, we are loath to deviate from a carefully crafted statutory and procedural scheme for resolving issues that are both deeply personal and widely debated. Such a course is fraught with the danger of undermining public and individual confidence in the ability or willingness of our government to devise clear rules for deciding these difficult questions and to adhere to them.
Our second reason for declining to remand this case is more straightforward: the record before the circuit court is not likely to yield findings sufficient to deny the waiver petition. We have examined the record to determine whether a remand to make adequate findings would serve a practical purpose. In doing so, we are mindful that the traditional appellate *284 presumption of correctness, as well as its attendant deference to determinations of fact made in the lower court, require us to view the record in the light most favorable to sustaining the order under review. We are also aware that these principles are considerably weakened when the evidence is undisputed and when, as here, it is presented to a judge sitting without a jury. See Bradley v. Waldrop, 611 So.2d 31, 32 (Fla. 1st DCA 1992); see also Holland v. Gross, 89 So.2d 255, 258 (Fla.1956). Moreover, the presumption of correctness never requires an appellate court to disregard record evidence that disproves the lower court's findings or that reveals its ruling to be an abuse of discretion. See Jones v. Goodyear Tire & Rubber Co., 871 So.2d 899, 904 (Fla. 3d DCA 2003) (reversing order granting a new trial based on the trial court's determination that it had erroneously given a jury instruction where the order was not supported by written findings and where the record showed that the jury instruction was warranted), review denied, 886 So.2d 227 (Fla.2004).
We reiterate that we are not in a position to make findings of fact based on the written record. But having viewed the record in light of the foregoing principles, we conclude that a remand for findings would not be useful for the purpose of justifying the trial court's denial of Doe's petition. As previously described, the record of the hearing below contains evidence on the factors set forth in the statute. All of that evidence is undisputed and it supports granting Doe's petition. Doe's age bears positively on the statutorily-mandated inquiry into her emotional development, maturity, and understanding. See In re Doe, No. 03AP-1185, 2003 WL 22871690 (Ohio Ct.App. Dec. 5, 2003) (unpublished opinion). The same is true of her stellar academic performance in high school, of her ongoing quest to prepare herself for a career, and of her financial contributions to her living expenses and those of her family. See, e.g., Ex parte Anonymous, 618 So.2d 722 (Ala.1993), partially overruled on other grounds by Ex parte Anonymous, 803 So.2d 542 (Ala.2001); Ex parte Anonymous, 664 So.2d 882, 884 (Ala.1995); In re Jane Doe, 134 Ohio App.3d 569, 731 N.E.2d 751, 752-53 (1999); In re Jane Doe, 83 Ohio App.3d 904, 615 N.E.2d 1142, 1143 (1992). Doe's emotional development and maturity are further evidenced by her committed relationship with a young man she intends to marry, by her consultation with him about her condition, by her attempt to address the situation medically, and, indeed, by her determination to do so at this time rather than wait until she turns 18 and needs no judicial bypass to avoid informing her parents. See Ex parte Anonymous, 810 So.2d 786 (Ala.2001); In re Anonymous, 718 So.2d 64 (Ala.Civ.App. 1998). Her understanding of her circumstances is manifest in her appreciation that there are medical risks associated with the procedure, as well as religious and emotional consequences. Finally, Doe's assessment of her relationship with her parents and of their likely reaction to her decision is consistent with all the other circumstances of the case; certainly, it is not the sort of unrealistic view that might be expected of someone who does not have the emotional development, maturity, intellect, or understanding contemplated in the statute.
On the first ground alleged in Doe's waiver petition, it should be kept in mind that she was not required to prove that she has the maturity of an adult. See Ex parte Anonymous, 618 So.2d 722 (Ala. 1993); Anonymous, 549 So.2d 1347 (Ala. Civ.App.1989). Rather, she was called upon to demonstrate that she is "sufficiently mature" to make the decision whether to terminate her pregnancya right that minors possess under the federal *285 and Florida constitutions. See Hodgson v. Minnesota, 497 U.S. 417, 435, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990); Planned Parenthood of Cent. Mo. v. Danforth, 428 U.S. 52, 75, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); T.W., 551 So.2d at 1194-95. To be sure, the statute required her to prove this ground by clear and convincing evidence. The supreme court has described this standard as
an intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.
In re Davey, 645 So.2d 398, 404 (Fla.1994); see also In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995). On the face of it, Doe's testimony was clear and direct. It was credible in that it was consistent with all the known circumstances, and it was undisputed. Certainly, with one possible exception, it was sufficient to satisfy the clear and convincing standard of proof necessary to establish the maturity basis for a judicial bypass.
The possible exception stems from the record's inability to portray Doe's demeanor. Obviously, we did not observe her during her testimony. But when making the required written and specific findings in support of its ruling, the trial court did not mention that it found Doe's demeanor to be immature, or even suggest that Doe's demeanor had any bearing on its consideration. And at the hearing itself the court commented that several factors demonstrated that Doe was mature. Cf. Ex parte Anonymous, 810 So.2d 786 (Ala. 2001) (noting that the trial court's order did not mention the minor's demeanor, but the totality of the judgment showed that the court found the minor to be credible).
In the context of determining whether we should remand for findings at the expense of the strict time deadlines set forth in the statute and appellate ruleassuming, arguendo, that we would even be authorized to do soour examination of the record strongly suggests that a remand would be fruitless on the maturity issue. Cf. Ex parte Anonymous, 808 So.2d 1025, 1028 (Ala.2001) (remanding to trial court to supplement its order with factual findings required under section 26-21-4, Alabama Code (1975), which, unlike the Florida statute, does not contain a provision that the minor's petition is automatically granted if the trial or appellate court fails to rule within the stated time periods).
On the second ground raised by Doe's petitionwhether notifying her parents of her decision would not be in her best interestwe also conclude that a remand for additional findings would be futile. It is important to note here that the "best interest" basis for waiving the statute's notification requirement is not a simple reference to the more general kind of inquiry most often associated with child custody or support determinations. Courts interpreting similar judicial bypass provisions in other states' parental notification statutes have recognized that the inquiry is more particularized to the question whether it is in the minor's best interest not to notify her parents that she is exercising her constitutional right to terminate her pregnancy. Thus, for example, when discussing best interest in this context, the Texas Supreme Court listed the following factors that should be considered:
(1) the minor's emotional or physical needs; (2) the possibility of emotional or physical danger to the minor; (3) the stability of the minor's home and whether notification would cause serious and lasting harm to the family structure; *286 and (4) the relationship between the parent and the minor and the effect of notification on that relationship. An additional factor that courts in other jurisdictions have considered is whether notification may lead the parents to withdraw emotional and financial support from the minor. This list is not exhaustive, and in making the best-interests determination the trial court should consider all relevant circumstances.
In re Doe 2, 19 S.W.3d 278, 282 (Tex.2000) (citations omitted).
Here, Doe gave all indication of possessing an accurate view of her parents' likely response to her decision. She was nearly an adult herself, had a good relationship with her parents, and lived in their home. Clearly, her vantage point was far superior to the court's, and from that vantage she feared that notifying her parents would destroy her relationship with them and possibly lead to her ejection from their home. Of course, at a point in Doe's life when she remained financially dependent on her parents as she worked toward her own financial independence, destroying that relationship likely would result in the loss of their financial support. Thus, notifying Doe's parents posed a risk to her current and future ability to be self-supporting that was similar to the very risk she sought to avoid by terminating the pregnancy. Under the criteria outlined by the Texas Supreme Court, these factors would support a finding that notifying Doe's parents of her decision was not in her best interest. And the undisputed testimony in that regard, from the only person at the hearing who was in a position to know, certainly preponderated over the trial court's speculation that Doe might not be giving her parents enough credit. See City of St. Petersburg v. Vinoy Park Hotel Co., 352 So.2d 149, 151 (Fla. 2d DCA 1977) ("A trier of fact simply should not disregard unrebutted, sworn, affirmative relevant testimony absent some reason why it ought not to be relied upon.").
Again, we do not find these facts from the written record, and we cannot. But, as in the case of the maturity basis for a judicial bypass, our examination of the record on the best interest issue reveals that a remand for findings of fact sufficient to satisfy the statutory requirement likely would be for naught.
In sum, the order dismissing Doe's petition for a judicial bypass of the parental notification requirement does not contain sufficient written and specific findings to support the circuit court's decision. A remand for the supplementation of those findings would require us to violate the time limitation imposed by rule 9.110(n) as well as the clear legislative intention that these proceedings conclude speedily and efficiently. Moreover, our examination of the record convinces us that there would be little, if anything, to be gained from such an endeavor.
Accordingly, the order is reversed. In accordance with rule 9.110(n), Jane Doe's petition for a judicial waiver of the parental notification required in section 390.01114 is deemed granted. The clerk shall place a certificate to this effect in the file and provide Doe with a certified copy of it for delivery to her physician. This court's mandate shall issue simultaneously with this opinion, and no rehearing motion shall be entertained.
FULMER, C.J., Concurs.
DAVIS, J., Dissents with opinion.
DAVIS, Judge, Dissenting.
I respectfully dissent. I would affirm the trial court's dismissal of the petition for judicial waiver because the petitioner *287 failed to make the necessary showing that would entitle her to relief.
Proceedings pursuant to section 390.01114, Florida Statutes (2005), are somewhat different from the routine evidentiary hearing. The statute provides that the trial court should grant the relief if it finds by "clear and convincing evidence" that the minor is "sufficiently mature" to make the decision to terminate the pregnancy or if the court finds by "a preponderance of the evidence" that notification of the parents "is not in the best interest of the petitioner." § 390.01114(4)(c), (d). The statute further provides that the petitioner shall be given court-appointed counsel without cost to assist the petitioner at the hearing. § 390.01114(4)(a). Finally, the statute requires that the trial court "shall hear evidence relating to the emotional development, maturity, intellect, and understanding of the minor, and all other relevant evidence" and shall issue "written and specific factual findings and legal conclusions supporting its decision." § 390.01114(4)(e).
Although the statute does not specifically so state, the implication of the statute is that the burden of making the showing of maturity and/or best interest of the petitioner is on the petitioner.[4] Further, since there is no adversarial party, the witnesses are not subject to cross-examination and there will be few, if any, contested facts for the trial court to resolve. The responsibility assigned to the trial judge, then, is to hear the testimony presented by the petitioner and determine whether the petitioner has shown by clear and convincing evidence that she is of sufficient maturity to make this decision without parental assistance or by a preponderance of the evidence that it is in her best interest not to notify her parents of the decision.
There is an absence of both statutory and case law offering guidance for appellate review of these decisions. Similar statutes in other states specify that appellate review is based on a de novo standard. See In the Matter of B.S., 205 Ariz. 611, 74 P.3d 285 (2003); In re Petition of Anonymous 1, 251 Neb. 424, 558 N.W.2d 784 (1997). The petitioner here argues that this court should apply the "clear error" test to the trial court's findings of fact and review the trial court's conclusions of law de novo. This court has discussed the standard of review for a bypass proceeding in In re E.B.L., 544 So.2d 333 (Fla. 2d DCA 1989). Although that case involved a prior statute, the reasoning is applicable.
We assume, for purposes of this opinion, that the trial court makes a discretionary decision under this statute which is governed by the limited standard of review announced in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). Thus, we cannot reverse the trial court if reasonable people could differ as to the propriety of the trial court's decision.
Id. at 335. However, Judge Altenbernd discussed in a footnote the possibility that, due to the potential implication of the minor's right of privacy, the trial court's decision may be subject to a more stringent appellate review. Id. at 335 n. 5. Due to the silence of the statute and the lack of definitive case law, it is unclear what standard of review we should apply. However, since the trial court had the benefit of *288 personally observing the witness, I conclude that it is appropriate to apply an abuse of discretion standard to the factual findings while reviewing the legal conclusions de novo.
The issue before this court is whether the trial court erred in finding that the petitioner failed to meet the required showing of proof. Since the testimony in such a hearing is not disputed, the trial court's findings of fact become an issue on review only if the trial court rejects the facts presented by the testimony. If the order indicates that a witness's demeanor caused the trial court to disbelieve his or her testimony, the appellate court would defer to such a conclusion. However, without the trial court's notation regarding a witness's demeanor, the facts recited by the witness would be accepted on appellate review.
Whether the petitioner presented sufficient facts to meet the "clear and convincing" standard required to show maturity is a legal conclusion that is subject to de novo review. Likewise, the determination of whether the petitioner showed by a "preponderance of the evidence" that it is in the petitioner's best interest not to notify her parents is also a legal conclusion.
Accordingly, I suggest that we should focus our review on what facts were presented and how they measure against the appropriate test. Although neither the statute nor Florida case law offers guidance as to the definition of "maturity" or "best interest," courts in other states with similar statutes have issued decisions that are helpful.
In attempting to define maturity for the application of the bypass statute in Nebraska, the Supreme Court of Nebraska noted:
Maturity is "difficult to define, let alone determine...." Bellotti v. Baird, 443 U.S. 622, 643-44 n. 23, 99 S.Ct. 3035, 3048 n. 23, 61 L.Ed.2d 797 (1979) (commonly referenced as Bellotti II). Notwithstanding, determine it we must. While the U.S. Supreme Court has not explicitly defined "maturity" in the context of parental notification or consent statutes, it has observed that "minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them." (Emphasis supplied.) Id. 443 U.S. at 635, 99 S.Ct. at 3043-44.
In re Petition of Anonymous 1, 558 N.W.2d at 787-88. The federal district court for Utah, in its attempt to define maturity, concluded that "maturity is not solely a matter of social skills, level of intelligence or verbal skills. More importantly, it calls for experience, perspective and judgment." H___ B___ v. Wilkinson, 639 F.Supp. 952, 954 (D.Utah 1986). The Wilkinson court went on to suggest that the minor's prior work experience, experience living away from home, and experience in handling personal finances should be considered.
In considering the minor's perspective, the Wilkinson court concluded that the trial court should consider the minor's appreciation and understanding of the seriousness and possible detrimental impact of each available option as well as the minor's realistic perception and assessment of possible short-term and long-term consequences of each of the options. Finally, in assessing judgment, the court opined, "The exercise of good judgment requires being fully informed so as to be able to weigh alternatives independently and realistically. Among other things, the minor's conduct is a measure of good judgment." Id. at 954.
Although the "experience, perspective, and judgment" definition of maturity is not controlling in this court, the discussion is *289 helpful. The trial judge here determined that the petitioner did not provide clear and convincing evidence to show that she had sufficient maturity to make such a decision without notifying her parents. The trial court found that the petitioner is almost eighteen years of age, has worked part-time, has assumed responsibility for a personal monthly bill, and helps pay for another of her personal monthly bills. When she was working full-time, she contributed toward the family's expenses as well, although there is no indication as to how often this occurred. She concluded, "But whatever I can now, I just give whatever I can." She is a recent high school graduate with an admirable grade point average and is enrolled in a trade school. She plans to marry the father of the child within a year.
My concern here is that, despite petitioner's apparent intellectual ability and limited financial responsibility, she failed to demonstrate the maturity required by statute to make such an important decision on her own. If maturity and good judgment are measured by one's attempt to become fully informed of all of the options available and the possible consequences of those options, the instant record does not demonstrate that this petitioner exhibited such maturity. There was no testimony as to what she had done to inform herself of the options available to her, the nature of the medical procedures that would be performed, or the possible short-term and long-term ramifications of each of the options available. In fact, the testimony was that upon determining by a home test that she was pregnant, the petitioner went to a clinic to terminate the pregnancy. There was no testimony as to any counseling that may have taken place at that time. Rather, the testimony indicates that the clinic sent her to the court to file her petition for the waiver of parental notification and that she was then appointed an attorney. There was no testimony as to what efforts she made to educate herself as to the options available and the ramifications of each. The only testimony on this issue was the petitioner's affirmative response to her attorney's inquiry regarding whether she had considered the long-term ramifications of her decision. Likewise, her attorney asked whether she understood the possible medical complications, and she responded, "Uh-huh, I understand that." There is nothing to show what her understanding of these ramifications and medical complications might include. Furthermore, there is nothing to show that the petitioner was aware of any options other than termination of the pregnancy.
The absence in the record of any testimony as to what the minor understood supports the trial court's finding regarding maturity. This minor has not shown that she is in fact well informed as to the issues involved in making such a decision and that she is making a mature, rational decision. Her decision to immediately seek termination without seeking any other information or counseling establishes her failure to show by clear and convincing evidence that she possesses sufficient maturity to be entitled to bypass relief.
The record is similar regarding the petitioner's best interest. The testimony indicated that she has a good relationship with her parents. However, the petitioner testified that she believed her parents would disapprove of her decision and that their disapproval might negatively impact her relationship with them. Yet, she failed to provide any factual basis to show that this is a reasonable conclusion. The question is whether this shows by a preponderance of the evidence that it is in the best interest of the minor to waive the parental notification. Under the facts of this case, with this minor making this decision as described above, I would conclude that the *290 facts do not show by a preponderance of the evidence that such would be in her best interest.
The fatal flaw found by the majority in the trial court's order is its failure to make sufficient findings of fact. I disagree with the basic assumption of that opinion. The majority seems to suggest that if there are facts that have not been supplied by the petitioner, i.e., what steps she has taken to educate herself as to the options and ramifications, what information she has considered in making the decision, etc., that the trial court must make findings as to the absence of those facts. I disagree. The trial court recited the facts that were presented by the petitioner and concluded that they did not meet the statutorily required standard for the separate issues. Based on my review of the record, I agree and would affirm the trial court's dismissal of the petition.
NOTES
[1] Doe gave the exact date of her birthday. To better ensure her anonymity, see § 390.01116, we are giving only general descriptions of this and other more detailed aspects of her testimony.
[2] A virtually identical 1999 predecessor, § 390.01115, Fla. Stat (1999), was stricken by the Florida Supreme Court as violative of the right to privacy set forth in article I, section 23, of the Florida Constitution. N. Fla. Women's Health & Counseling Servs. v. State, 866 So.2d 612 (Fla.2003). The 2005 statute was created after Florida's voters amended the constitution to expressly permit the legislature to enact a parental notification law notwithstanding the Florida constitutional privacy right. Compare Art. I, § 23, Fla. Const. with Art. 10, § 22, Fla. Const.; see also In re Amendments to the Florida Rules of Juvenile Procedure, 907 So.2d 1161 (Fla.2005).
[3] By no means should our comments on the shortcomings of the findings in the order be taken as criticism of the very able circuit judge who entered it. We feel constrained by having to sort out and apply a new and uninterpreted statute in a mere 10 days. But the time permitted us is lengthy compared to the 48 hours allotted to the circuit judge.
[4] See Ohio v. Akron Ctr. for Reprod. Health, 497 U.S. 502, 515, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (stating that a state may require the minor to prove maturity in a bypass proceeding); see also In the Matter of B.S., 205 Ariz. 611, 74 P.3d 285, 289 (2003) (stating that since the minor controls the presentation of evidence and the trial court will not receive evidence disputing the minor's maturity or best interest claims, the minor must prove entitlement to the judicial bypass).