WETHERELL, J.,
concurring.
I agree that the trial court abused its discretion in denying Appellant’s petition for judicial waiver under the circumstances of this case. I write to explain the rationale for my vote to reverse.
With certain exceptions not applicable here, Florida’s Parental Notice of Abortion Act requires the physician performing or inducing the termination of a minor’s pregnancy to notify the minor’s parent or legal guardian before the minor undergoes the procedure. See § 890.01114(2)(a), (2)(c), (3)(a), Fla. Stat. (requiring actual notice at least 48 hours before the procedure or, if actual notice is not possible, constructive notice at least 72 hours before the procedure). As required by the Florida Constitution,[1] the Act authorizes the minor to petition the circuit court to waive the notification requirement. See § 390.01114(4), Fla. Stat. The Act provides three grounds for a judicial waiver, only two of which were pled by Appellant: (1) that she is “sufficiently mature to decide whether to terminate her pregnancy,” and (2) that “notification of a parent or guardian is not in [her] best interest.” See § 390.01114(4)(c), (4)(d), Fla. Stat. Appellant had the burden to prove these grounds by clear and convincing evidence. Id.
Under section 390.01114(4)(c), the minor is not required to prove that she is self-sufficient or has the maturity of an adult; she is only required to prove that she has “the necessary emotional development, intellect and understanding to make an informed decision regarding terminating her pregnancy.” See In re Doe, 924 So.2d 935, 938-39 (Fla. 1st DCA 2006) {Doe I). Under section 390.01114(4)(d), the minor must establish more than “a generalized fear of telling her parents” of her decision to terminate her pregnancy and “the trial court should weigh the advantages and disadvantages of parental notification in the minor’s specific situation.” In re Doe, 973 So.2d 548, 553 (Fla. 2d DCA 2008); see also In re Doe, 932 So.2d 278, 285-86 (Fla. 2d DCA 2005) (identifying factors to be considered in determining whether parental notification is in the minor’s best interest, including “whether notification may lead the parents to withdraw emotional and financial support from the minor”) (quoting In re Doe 2, 19 S.W.3d 278, 282 (Tex. 2000)).
On appeal, the appellate court reviews the trial court’s decision to deny the judicial waiver for an abuse of discretion. See § 390.01114(4)(b)2., Fla. Stat. (“The reason for overturning a ruling on appeal must be based on abuse of discretion by the court and may not be based on the weight of the evidence presented to the circuit court since the proceeding is a nonadversarial proceeding.”). This is a highly deferential standard of review, but it does not require the appellate court to simply rubber-stamp the trial court’s decision. As this court previously explained:
We are well aware of the presumption of correctness that attaches to a trial court’s order, and the deference owed to those determinations of a finder of fact *727 that are supported by competent, substantial evidence. However, as observed in In re Doe [932 So.2d 278 (Fla. 2d DCA 2005) ], these principles are less compelling when the evidence is undisputed and is presented to a judge sitting without a jury, and an appellate court is not required to disregard record evidence that disproves the lower court’s findings or reveals its ruling to be an abuse of discretion.
In re Doe, 921 So.2d 753, 755 (Fla. 1st DCA 2006) (Doe II) (emphasis added).
The seminal case in Florida discussing the nature of judicial discretion and the appellate standard for reviewing discretionary decisions is Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). In that case, the Florida Supreme Court explained that an abuse of judicial discretion should be found only when no reasonable person would agree with the lower court’s ruling. Id. at 1203 (“If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion.”). However, the Court also emphasized that:
The trial court’s discretionary power is subject only to the test of reasonableness, but that test requires a determination of whether there is logic and justification for the result. The trial courts’ discretionary power was never intended to be exercised in accordance with whim or caprice of the judge nor in an inconsistent manner. Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness.
Id. (emphasis added); see also Albert v. Miami Transit Co., 154 Fla. 186, 17 So.2d 89, 90 (1944) (“Judicial discretion is a discretion guarded by the legal and moral conventions that mold the acceptable concept of right and justice. If this is not true, then judicial discretion, like equity, will depend on the length of the judge’s foot, the state of his temper, the intensity of his prejudice, or perhaps the zeal to reward or punish a litigant.”); Barber v. State, 5 Fla. 199, 206-09 (1853) (Thompson, J., concurring) (explaining the important role that appellate review of discretionary decisions plays in preserving the rule of law and furthering justice, and citing Lord Coke for the proposition that “whoever hath power to act at discretion, is bound by the rule of reason and of law”).
The Second District recently relied on the Canakaris principle that “[ljike cases should be decided alike” to reverse the denial of a petition for judicial waiver. See In re Doe, 113 So.3d 882, 889 (Fla. 2d DCA 2012). The court noted that the facts of the case before it were “remarkably similar” to the facts of a prior decision reversing the denial of a petition for judicial waiver. Id. The court pointed out that the trial court did not even mention the prior decision and reasoned that the trial court’s failure to follow precedent constitutes an abuse of discretion. Id. The same is true here.
§ 390.01114(4) (c) — Sufficiently Mature
The factual circumstances of this case are strikingly similar to both Doe I and Doe Il[2] neither of which was mentioned *728 by the trial court in its otherwise comprehensive order. In each case, the trial court denied a petition for judicial waiver on the ground that the minor was not sufficiently mature to make the decision to terminate her pregnancy, and in each case, this court reversed on appeal.
The minors in Doe I and Doe II were 17-year-old high school students. They both were doing well in school, were involved in extracurricular activities, and planned to attend college. They both worked part-time, but were financially dependent upon and lived with their parents. And they both were fully aware of the risks of and alternatives to terminating their pregnancies, having obtained information from a reproductive health care clinic and online research.
Similarly, the minor in this case is a 17⅜-year-old high school senior. She is an excellent student, earning A’s and B’s in advance placement classes, and she is involved in extracurricular activities. She scored well on the ACT exam and she has been accepted to three colleges,[3] at one of which she may be able to play an intercollegiate sport. She works part time, but is financially dependent upon her parents with whom she lives. She is fully aware of the risks of and alternatives to terminating her pregnancy, having obtained information from a reproductive health care clinic and her own online research.
Admittedly, a difference between this case and Doe I and Doe II is that the minors in those cases had discussed their situation with “trusted adults” — an adult at church in Doe I and the mother of the minor’s best friend in Doe II — whereas the only adults with whom Appellant had discussed her situation are a counselor at the reproductive health care clinic and her boyfriend’s family counselor.[4] However, this difference is not enough to render Doe I and Doe II distinguishable because there is no indication in the record that Appellant had a “trusted adult” available to her. See In re Doe, 113 So.3d at 890 (Northcutt, J., concurring) (“Some courts have considered it a hallmark of maturity that [the minor] has sought such counsel [of a trusted adult]. But, obviously, her failure to do so is not necessarily evidence of immaturity, and it could have no practical significance at all in the absence of proof that she had a trusted adult confidante available to her.”). Moreover, as Judge Griffin noted in her dissent in In re Doe, 112 So.3d 791, 793-94 (Fla. 5th DCA 2013), the main purpose of the Act is to protect the minor’s privacy and, thus, the minor’s failure to discuss her situation with an adult is not necessarily indicative of a lack of maturity.
Arguably, another difference between this case and Doe I and Doe II is that there is no indication that the trial courts *729 in those cases based the denial of the judicial waiver on the minor’s demeanor or credibility, whereas the trial court’s order in this case purported to discount Appellant’s credibility because she testified that she would lie to her parents if necessary so they would not figure out that she was pregnant and had an abortion. The main problem with this rationale is that it requires a leap of logic to conclude that Appellant is not a credible witness while under oath in a judicial proceeding simply because she thinks she can deceive her parents outside of the courtroom. Additionally, as discussed by Judge Roberts, this rationale cannot be squared with the fact that the underlying purpose of the Act is to allow the minor to keep her decision to terminate her pregnancy from her parents. Finally, this portion of the trial court’s order cannot be reconciled with the court’s express finding at the hearing that Appellant was a credible witness; there, the court stated without any equivocation that “I do think you are a credible witness. And I think your demeanor is proper.”
I recognize that the trial court’s order also referred to Appellant as “extremely naive” about her situation, but there is absolutely no record support for this finding. To the contrary, the record demonstrates that Appellant, like the minors in Doe I and Doe II, is intelligent, responsible,[5] emotionally developed and stable, and that she has a full understanding of the medical risks,[6] emotional consequences, and alternatives[7] to terminating her pregnancy. Accordingly, on this record, it was unreasonable (and, thus, an abuse of discretion) for the trial court to find that Appellant was not sufficiently mature to make the decision to terminate her pregnancy.
Not only are the circumstances of this case strikingly similar to those in Doe I and Doe II, they are distinguishable from *730 the only reported decision affirming the denial of a petition for judicial waiver: In re Doe, 973 So.2d 548 (Fla. 2d DCA 2008).[8] The panel opinion in that case noted that the minor’s conclusory testimony — which comprised only six pages of an 11-page hearing transcript, — “tells us virtually nothing about her level of maturity” and fails to demonstrate that she was aware of, appreciated, or seriously considered the physical or emotional risks of having an abortion. Id. at 550, 552. Here, by contrast, the transcript of the hearing comprised almost 60 pages with considerable narrative testimony from Appellant demonstrating that she has a full understanding of the abortion procedure and the associated risks. Cf. id. at 557 (Casanueva, J., concurring in denial of rehearing en banc) (suggesting that “illuminating factual testimony” rather than “monosyllabic answers” is necessary to meet the clear and convincing evidence standard in section 390.01114(4)(c)).
I am mindful of the extraordinarily difficult circumstances faced by trial judges in cases arising under the Act, and I commend the judge in this case for the diligent and respectful manner in which he conducted the proceedings below. However, based on the factual similarities between this case and Doe I and Doe II, and the absence of any indication in the record that Appellant lacked the requisite capability to make an informed decision regarding termination of her pregnancy, logic and reason compelled a finding that Appellant was sufficiently mature to make the decision to terminate her pregnancy without notifying her parents. Accordingly, the trial court abused its discretion in finding otherwise on this record.

§ 390.01114(4) (d), Fla. Stat.— Best Interest

With respect to the allegation in the petition that parental notification was not in Appellant’s best interest, the trial court concluded that Appellant established little more than “a generalized fear that her parents will disagree with the decision” to terminate her pregnancy. This finding, if supported by the record, would justify the denial of a judicial waiver under section 390.01114(4)(d), Florida Statutes. See In re Doe, 973 So.2d at 553. However, this finding is not supported by the record.
Appellant’s testimony clearly articulated the significant and lasting adverse impacts that parental notification would have on both her relationship with her parents and her future. Appellant testified that she had a good relationship with her parents, but that because of her parents’ strong religious opposition to pre-marital sex and abortion, she was “not at all” able to discuss her situation with them and that if they found out that she was pregnant and intended to terminate the pregnancy, they would “kick [her] out of the house,” withhold financial support for college, and “just cut ties altogether.” She further testified that her close relatives share her parents’ religious beliefs and “would disown [her],” and that her boyfriend would also likely be kicked out of his house because his parents share her parents’ religious views about abortion. Appellant explained in narrative testimony that these fears are based on conversations she had with her parents and comments they made to her in the past about her friends and other people who had been in her situation.
The Second District was faced with similar circumstances in In re Doe, 932 So.2d *731 278 (Fla. 2d DCA 2005). Like Appellant, the minor in that case “ha[d] a good relationship with her parents” but she believed that they would “adamantly oppose her decision” to terminate her pregnancy and that “the issue might well destroy the relationship and that her parents might ask her to leave their home.” Id. at 281. Despite these circumstances, the trial court denied the petition for judicial waiver finding that the minor “has not established that a waiver would be in her best interests.” Id.
On appeal, the Second District reversed. The court first noted that the trial court’s findings were insufficient to facilitate judicial review of the order. Id. at 282-88. But the court nevertheless reviewed the record to determine whether there was any evidentiary support for the trial court’s ruling. Id. at 284. After identifying various factors to be considered in evaluating the “best interest” issue, id. at 285-86 (quoting In re Doe 2, 19 S.W.2d at 282), the court concluded that there was no need to remand for factual findings because the evidence of record showed that parental notification was not in the minor’s best interest. Id. at 286. In coming to that conclusion, the court observed:
Here, Doe gave all indications of possessing an accurate view of her parents’ likely response to her decision. She was nearly an adult herself, had a good relationship with her parents, and lived in their home. Clearly, her vantage point was far superior to the court’s, and from her vantage she feared that notifying her parents would destroy her relationship with them and possibly lead to her ejection from their home.And the undisputed testimony ... from the only person at the hearing who was in a position to know, certainly preponderated over the trial court’s speculation that Doe might not be giving her parents enough credit.
Id. at 286 (emphasis added). These observations are equally applicable to this case.
Here, the trial court expressed at the hearing, and reiterated in its order, the view that Appellant would be better off if she notified her parents now rather than them possibly finding out in the future that she was not only pregnant, but that she had an abortion. This well-intentioned, but overly-paternalistic view misses the mark.
First, under section 390.01114(4)(d), the question the trial court should have focused on is not whether Appellant would be better off if her parents were notified of her decision in advance rather than learning of it after-the-fact,[9] but rather whether Appellant would be better off if her parents were notified of her decision than she would be if they were not notified. By focusing on the issue of whether Appellant will be better off in notifying her parents now rather than later, the trial court effectively ignored the issue that it should have decided: whether requiring parental notification at this time will do Appellant more harm than good. See In re Doe, 973 So.2d at 553 (“the trial court should weigh the advantages and disadvantages of parental notification”).
Second, there is no record support for the trial court’s speculative finding that it is “highly probable — if not certain” that *732 Appellant’s parents will ultimately find out that she was pregnant and had an abortion. Nor is there any record support for the trial court’s finding there would be “an even greater fracturing” of the relationship between Appellant and her parents in those circumstances. Appellant testified that her parents would be “equally as upset” if they found out about her decision to terminate her pregnancy now or after-the-fact, but she testified that she was confident that her parents would not find out even though she has a close relationship with them because, among other reasons, “[t]hey have no idea” that she is pregnant despite the fact that she has been pregnant for over 9 weeks. Also, as Appellant’s counsel argued below, the abortion procedure is a fairly routine medical procedure with typically minor side effects that would not likely raise the parents’ suspicions, and consistent with this argument, Appellant testified that the procedure can be completed over the weekend so as not to disrupt her school and work schedule.
I recognize that the trial court purported to discount Appellant’s testimony based upon her asserted ability to deceive her parents. However, as noted above and elaborated on by Judge Roberts, the mere fact that Appellant thinks that she is able to deceive her parents is not a sufficient basis for the trial court to ignore her testimony, particularly in light of the court’s unequivocal observations at the hearing that Appellant was a credible witness and had a proper demeanor. See In re Doe, 113 So.3d at 887; In re Doe, 932 So.2d 286.
Moreover, as a practical matter, the denial of a judicial waiver in this case would leave Appellant with two options: carry an unwanted pregnancy to term or notify her parents of her intent to have an abortion. It is clear from Appellant’s testimony that either of these options would irreparably harm the parent-child relationship and would disrupt, if not destroy, Appellant’s plans for her future. On the other hand, if the petition is granted, the parent-child relationship may not be harmed at all because Appellant’s parents may never find out about the pregnancy or the abortion and Appellant will be able to attend college and make a better life for herself than she likely would have had otherwise.

Conclusion

In cases arising under the Act, the appellate court is required to give considerable deference to the trial court’s decision. However, the appellate court is not required to rubber-stamp the trial court’s decision simply because review is subject to the deferential abuse of discretion standard. Indeed, if the record reflects that the trial court did not fully or properly consider the applicable statutory criteria or the prior reported cases with similar facts or if the findings upon which the trial court’s decision is based are not supported by the record, reversal is warranted.
Here, because the trial court’s determination that Appellant was not sufficiently mature to terminate her pregnancy was not supported by the evidence of record and cannot be squared with the decisions in Doe I and Doe II, the court abused its discretion in denying the petition for judicial waiver under section 390.01114(4)(c). Likewise, because there is no record support for the trial court’s determination that waiver of parental notification is not in Appellant’s best interest, the court abused its discretion in denying the petition for judicial waiver under section 390.01114(4)(d).
For these reasons, I concur in the decision to reverse the trial court’s order and to remand this case for entry of an order granting Appellant’s petition for a judicial waiver.

. See art. X, § 22, Fla. Const. ("[T]he Legislature is authorized to require by general law for notification to a parent or guardian of a minor before the termination of the minor’s pregnancy. The Legislature ... shall create a process for judicial waiver of the notification..") (emphasis added).

. I recognize that these cases predated the 2011 amendments to the Act discussed by the dissent, but that does not make the cases any less binding on the trial court or any less relevant to our review of the reasonableness of the trial court's decision. Indeed, even though the Legislature codified an arguably more deferential standard of review than had been applied in the past, I am not persuaded that the amendments were intended to overrule Doe I or Doe II (or any other case) because the factors considered in the case law *728 to determine whether the minors were "sufficiently mature” were effectively codified by the 2011 amendments. See § 390.01114(4)(c)l.-2., Fla. Stat.

. A definite "education plan” such as this is an indication of maturity. See In re Doe, 973 So.2d at 557 (Casanueva, J., concurring in denial of rehearing en banc).

. The trial court expressed concern that these adults may have exerted undue influence on Appellant because the information they provided her about the abortion procedure and her alternatives "may not have been evenhanded” and "was not viewed through a spectrum that took [Appellant’s] personal situation into account.” This is rank speculation; there is absolutely no evidentiary support for the concern expressed by the trial court. First, as noted in the trial court's order, the record does not reflect the substance of Appellant’s conversations with these adults. Second, Appellant unequivocally testified on several occasions that no one was pressuring her to have an abortion and that she — and she alone — made the decision to terminate her pregnancy after considerable deliberation.

.The fact that Appellant lives at home and is financially dependent upon her parents does not mean that she lacks maturity or, as the trial court found, demonstrate that she is not responsible enough to make the decision to terminate her pregnancy without her parents' input and guidance. Indeed, in Doe I, this court reversed an order denying a judicial waiver based on similar reasoning, and explained:
If this were the test for determining "sufficient maturity,” then virtually no minors would receive judicial [waivers] unless their parents were so unfit as to render the minors as de facto adults.
The statutory term "sufficiently mature” does not require Doe to be self-sufficient. It is hardly surprising that a 17-year-old high school student continues to live at home under the direction, guidance, and security of her parents. One would hope that most minors are provided for by her parents and/or guardians, and that they are not expected to support themselves.
924 So.2d at 939. Moreover, on the issue of responsibility, it is noteworthy that Appellant and her boyfriend attempted to prevent a pregnancy by using a condom but the condom broke, and that Appellant has taken responsibility for the financial consequences of her behavior by selling some of her personal property to come up with the funds to pay for the abortion.

. The trial court found, and the record confirms that Appellant "had almost an encyclopedic memory regarding the potential side effects of an abortion.” Despite this, the trial court was critical of Appellant for not having "spoken to a medical doctor” about her situation. This court rejected a similar view in Doe II. See 921 So.2d at 756; accord In re Doe, 967 So.2d 1017, 1019 (Fla. 4th DCA 2007) (quoting Doe II).

. There is absolutely no record support for the trial court's finding that Appellant "has not fully considered alternatives to abortion.” Indeed, Appellant testified in response to the trial court’s questions that she was familiar with and considered adoption, foster care, and a temporary custody arrangement while she is in school, but she concluded that these options were not right for her based upon her family situation and college plans.

. Technically, there are three reported decisions affirming the denial of a petition for judicial waiver, but the majority opinions in the other two cases provide no factual details about the minors involved so as to provide guidance in future cases. See In re Doe, 112 So.3d 791 (Fla. 5th DCA 2013); In re Doe, 67 So.3d 268 (Fla. 2d DCA 2011).

. The trial judge correctly recognized at the hearing that this issue was something Appellant had to determine for herself because, there, he told Appellant that the possibility that her parents would "hate it more when they find out that not only are you [] pregnant, but that you had an abortion ... [is] something that you have to weigh in your own scales and come to a conclusion about what is better or what’s worse.” However, in the order, the judge decided this issue for Appellant and determined that she would be better off telling her parents now rather than having them find out after-the-fact.